## Charles Word *v.* The State.

1. Continuance.— In revising the refusal of a continuance asked on account of the absence of a witness, the trial court when it acts on the motion for a new trial, and this court upon appeal, look to the evidence adduced at the trial, in order to determine whether the desired testimony was probably true as well as whether it was material if true.  Note a state of proof held to show that the desired testimony, though ostensibly material, was not probably true.

Statement of the case.

2. RAPE.— INDICTMENT for rape need not allege that the accused is an adult male, nor that he was over the age of fourteen years when the offense was committed. The form of an indictment for rape prescribed by the act of 1881, known as the " common-sense indictment act," contains the allegation that the accused is an adult male; but the forms prescribed by that enactment are not the only forms which may be used.

3. EVIDENCE — PENETRATION.— To warrant a conviction for rape, the fact of penetration must be established by the proof beyond a reasonable doubt, and the jury must be so instructed; but, like other facts, it may be established by circumstantial evidence. See the evidence which is held sufficient in the present case.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

By an indictment filed September 12, 1881, the grand jury of Bexar county charged the appellant with the rape of Dora Ellermann, committed on the 21st of the preceding month of August. The cause came to trial in the ensuing November, when the jury found the appellant guilty and assessed his punishment at death.

The appellant filed an application for a continuance, alleging that by one Juan Zalamantes, who had temporarily left the county, he could prove that no rape occurred at the time and place relied upon by the prosecution. The application was denied, and the defense reserved exceptions to the ruling, and also assigned it as one of the causes relied on for a new trial.

Dora Ellermann, testifying for the prosecution, stated that early on Sunday morning, August 21, 1881, she returned from the town of San Antonio to the place of her parents, west of the town and near the Catholic graveyard. On her way the witness saw defendant going on in front of her and in the same direction. He is a one-legged negro man, and walks with a crutch. He proceeded in front of witness until he reached the bed of the Alazan creek, where it is spanned by the International Railroad bridge. At that point of the road he stopped until wit-

ness was passing him, when he seized hold of her and she began to halloo. He then caught her by the throat and choked her until she could halloo no more, and then he pulled her out into a thick bunch of mesquite bushes where the weeds were very high, and said he wanted to screw her. Still struggling, she partially released herself from his grasp and again began to halloo, and then he struck her over the head with his crutch, cutting a large gash over her eye, and knocking her senseless to the ground. When consciousness returned to her she was lying on her back, with her clothes turned up over her head, and the lower portion of her person entirely exposed. The defendant had his stub-leg resting on her, with his pantaloons unbuttoned and his privates exposed. The witness was positive that while she was unconscious the defendant had connection with her, because her under-garments were bloody and her privates very sore. This occurred about twenty-five steps from the point at which the defendant first caught her. He threatened to shoot her when she first commenced hallooing, but she did not stop for that nor until he choked her so she could not halloo. The distance from the plaza of San Antonio to the place of the outrage is about a mile and a half. No one lived near the spot, though some negroes were living at a house some two or three hundred yards from it towards the town. They, however, could not see to the creek at the bridge, because of the high mesquite bushes. From the bridge to the house of the witness's father, the distance was about half a mile, and a Mexican family lived in a house about two or three hundred yards nearer the bridge than her father's place. Proceeding towards home, the witness stopped at the Mexican's house for the purpose of getting a young man who lived there to go and arrest the defendant. But the young man was not at home, and witness told his sister of the outrage perpetrated upon her. Witness went on home, and there told

her brother and the rest of the family, and, after washing herself and changing her clothing, she took her brother and started back to San Antonio to have the defendant arrested. When they got nearly to town they met a policeman named Rafael Martinez, and witness informed him of the outrage and gave him a description of the defendant; and then she took him to the spot where the outrage was perpetrated, and he went off to hunt the man who did it. This, said witness, "occurred in Bexar county in the State of Texas, and (pointing to the defendant) that is the man who treated me so cruelly."

On her cross-examination the witness stated that the defendant used both his hands in dragging her out into the bushes, but occasionally used one of his hands to move his crutch. She repeated her statement that he struck her over the head with his crutch and knocked her senseless; and she added "I know he did something else to me while I was senseless; I know it only because my under-clothing was bloody. . . I never saw the defendant until that morning; he was a perfect stranger to me. I did not give his name to the policeman, but a description of the defendant."

On re-direct examination the witness again gave her reasons for knowing that penetration had been effected — the facts that her under-garments were bloody and her privates sore for several days.

S. Chenault, for the State, testified to seeing the defendant, early on the Sunday morning in question, going towards the Catholic graveyard, and noticed that he was wearing a colored check shirt. About an hour after the witness saw the defendant he saw the policeman Martinez in search for him. Witness also went in search for defendant but did not find him, and subsequently learned that Martinez had arrested him. Witness did not see Dora Ellermann the morning in question, and knew nothing personally of the outrage on her.

Charity Lot, for the State, testified that she lived in the western suburb of San Antonio and towards the Catholic graveyard.   One Sunday morning the defendant, whom she knew, came to her house and asked for a drink of water, which she gave him.   He seemed to be excited and kept looking back in the direction whence he came and towards the Catholic graveyard.   After he got the drink of water he started out of the yard, and before he got to the gate he tore off and threw down the end of his shirt-sleeve, which witness had observed was hanging down and bloody.   Soon after the defendant left, the policeman Martinez came and inquired if witness had seen a one-legged man pass there.   Witness told Martinez that the defendant had stopped there and got a drink of water; and then witness showed Martinez the piece of shirt-sleeve which the defendant had torn off and thrown down in the yard, and Martinez picked it up and carried it off with him.   On cross-examination the witness stated that she did not know Dora Ellermann.

Rafael Martinez, the policeman, testifying for the State, fully and circumstantially corroborated so much of Dora Ellermann's testimony as related to what passed between them.   Witness saw the place where the outrage was perpetrated, at the intersection of the railroad and the Alazan creek, and gave a similar description of it to that of Miss Ellermann.   He observed on the ground the indications of the struggle in which she was dragged from the road into the bushes, and the indications of a scuffle where the weeds were knocked down and covered with blood.   The appearances were such as would be produced by the very recent dragging of some one from the road to the point where he saw the blood, which was still fresh.   That point was a low place among thick mesquite bushes, and was not visible from any house or from the road.   When Miss Ellermann and her brother met the witness near town, he saw that there was a

severe cut on her forehead; it was a fresh cut, and her face was badly swollen. After examining the spot where the outrage occurred, the witness started in search of the perpetrator, a description of whom Miss Ellermann had given. In his search the witness came to where Charity Lot lived, and there he got the wristband of a checked shirt; it was splotched with blood. After leaving Charity Lot's he went to where the defendant lived, but the latter was not at home. Witness continued the search for some hours, and finally found and arrested the defendant at a saloon. When arrested the defendant had on an under-shirt, but no other, and on his pants there were bloody spots. Witness recognized the defendant from the minute description of him given by Miss Ellermann, who could not give his name. On his cross-examination the witness stated that he identified the locality of the outrage only by being shown it by Miss Ellermann.

This was all the evidence in the case. A motion for a new trial was made and overruled, and the defendant appealed.

*W. H. Mason,* for the appellant. Appellant's motion to quash the indictment ought to prevail. Any person under the age of fourteen is incapable of committing the offense charged in the indictment. Can presumption as to sex or age be indulged in? Certainly not if either is necessary to the perpetration of the offense. A female cannot alone commit the offense of rape; the thought is contrary to nature.

Art. 533 of Penal Code provides that, "no person under the age of fourteen at the time the offense is charged to have been committed can be convicted of rape, or assault with intent to commit the offense."

The XVIIth Texas Legislature gave forms to guide the pleader in charging offenses known to our statutes. Form No. 8, for rape, is: "A. B., *an adult male,* did

rape C. D., a female." Requisites named in the form must be met, either in the language used or terms equivalent.

Our State decisions support the above theory. *George v. State*, 11 Texas Ct. App. 95; *Schenault v. State*, 10 Texas Ct. App. 410; *Burke v. State*, 8 Texas Ct. App. 341.

Attention of the court is called to decisions rendered by the Supreme Court of Alabama, under statutes similar to our own, viz.: "If the clause of the statute creating the offense contains an exception, the indictment should show negatively that the defendant does not come within the exception." 19 Ala. 552; *Anthony v. State*, 29 Ala. 28; *Bryan v. State*, 45 Ala. 87.

The third assignment is sustained by the facts. Without penetration the offense charged in the indictment was not committed. Penal Code, art. 532. No proof of penetration was made, and such a conclusion by the jury could be reached only by violent presumption. The prosecuting witness says: "While I was in a state of unconsciousness, I know the negro had connection with me, because my under-garments were bloody and my private parts very sore." Reasons assigned by the witness as the basis of her conclusions must form the basis of our reasoning. Soreness and blood may have been produced from natural cause and in many ways. On cross-examination the witness stated that she knew the defendant did something else to her, while she was senseless, *only because* her under-clothing was bloody. She states only two places where blood was on her person, viz.: her face and neck. She also states that her clothing was turned over her head. From the evidence, stripped of presumption, where did the blood on the under-clothing come from? Certainly from the face or neck, as the evidence negatives the idea of blood anywhere else.

The word *penetration* or its equivalent cannot be found in the evidence. The question as to penetration was

never asked and never answered. Art. 532, above re-
ferred to, *Burke* v. *State*, 8 Texas Ct. App. 341, and in
fact all the authorities support the proposition that *pene-
tration must be proved* to constitute the offense of rape.

The jury should have been charged the law as to sex
and age of defendant, viz., that if they did not believe
from the evidence that, at the time the offense is charged
to have been committed, the defendant was a male person
fourteen years of age, or that defendant was at said time
an adult male, they could not find him guilty of the
offense charged, nor of assault with intent to commit the
offense. Penal Code, art. 533; Laws 17th Legislature,
61, form No. 8; *Schenault* v. *State*, 10 Texas Ct. App.
410; *George* v. *State*, 11 Texas Ct. App. 95; *Burke* v.
*State*, 8 Texas Ct. App. 341.

*H. Chilton*, Assistant Attorney General, for the State.

WHITE, P. J. This appeal is from a judgment of con-
viction for a rape, wherein the penalty assessed is death.

An application for continuance made by the defendant
was overruled by the court before the trial was entered
upon, and this ruling of the court is the first error com-
plained of. If it be admitted that the showing was tech-
nically good under the requirements of the statute, this
fact alone would not entitle the party to the continuance
under the Revised Statutes (Code Crim. Proc. art. 560),
the matter being one now within the discretion of the
court even on a first application. When overruled and
exception saved, the question of the correctness of the
ruling again comes up on the motion for new trial, when·
the materiality of the evidence sought, and its probable
truth, are again considered in connection with the evi-
dence elicited at the trial. Art. 560, subdiv. 6. If again
held insufficient, the matter when submitted for revision
to this court involves the correctness of the action as to

materiality and probable truth; — both must appear. *Dowdy* v. *State*, 9 Texas Ct. App. 292; *Williams* v. *State*, 10 Texas Ct. App. 528; *Aiken* v. *State*, 10 Texas Ct. App. 610.

Tested alone by its probability of truth when viewed in the light of the evidence shown by the statement of facts, it is our opinion that the evidence sought to be produced, if it could be produced, would be wholly wanting. It would be entirely irreconcilable with facts and circumstances not only uncontradicted but admitted to be true in defendant's theory of the case.

After the motion for continuance was overruled, defendant submitted a motion to quash the indictment, which was also overruled. The propositions embodied in the motion were,—"1st. That the indictment failed to allege either that defendant was a male, that he was an adult male, or that he was over fourteen years of age.

"2. That the indictment fails to charge the offense of rape as defined by law, and simply charges a conclusion of law."

Neither of these objections is tenable. It is true that under "the common-sense indictment bill," as it is called, the form provided as sufficient in an indictment for rape is, "A. B., an adult male, did rape C. D., a female." (Acts 17th Legislature, p. 61, form 8.) Still the forms there prescribed are not intended to limit or exclude the right to use other forms in conformity with the statutory definitions and well-established precedents. Indeed, if the form thus prescribed were absolutely necessary, then only "adult males" could be indicted, tried and convicted for this most heinous crime, since "adult" has been held to mean one arrived at or over twenty-one years of age (*Schenault* v. *State*, 10 Texas Ct. App. 410); whilst our statute provides by necessary implication that a conviction for this offense may be had of a person who has attained the age of fourteen years. Penal Code, art. 528.

That the accused is an adult male or was over fourteen years of age need not be alleged; if he is not, it is matter of defense. As was said in *Davis* v. *State*, 42 Texas, 226, "it is positively enacted and ordered by the Code that persons under the age of fourteen are incapable of committing rape. But this is in a distinct and subsequent article from that in which the offense is defined and prohibited. It was therefore, under the well-settled rules of criminal pleading, unnecessary to allege appellant's age in the indictment, for the purpose of affirming his capacity to commit the offense."

Another objection urged for reversal is that the evidence fails to show "penetration," which is an essential prerequisite to the crime. Penetration is necessary to be proved upon a trial for rape, and it is so declared by statute. Penal Code, art. 527. And it is also well settled that penetration should be proved beyond a reasonable doubt, and that the jury should be so instructed. *Davis* v. *State*, 43 Texas, 189. But we imagine that in cases like the present this proof like any other might and could be established by circumstantial evidence. It would be a monstrous doctrine that villains who had rendered their victims insensible in order to effect their purposes should be freed from punishment because the victim could not swear positively to the act of penetration accomplished upon her during her state of insensibility.

In this case the prosecutrix was stricken insensible by a blow from the crutch of her assailant, and in that condition was ravished by him, and, whilst she cannot swear positively to the fact of penetration, she does state facts and circumstances which induced her to believe and know, and which are sufficient to satisfy any reasonable mind, if true, that her body must have been penetrated in the manner and to the extent demanded in law for this offense. The 7th paragraph of the charge to the jury submitted this issue in language stronger and more favorable to the accused than is perhaps required by the

law.   The charge was amply sufficient in every respect. Nor is there any question as to proof of the venue of the offense or the identity of the accused.   The injured female asserts positively in her direct examination, "this all occurred in Bexar county, in the State of Texas, and that is the man (pointing to the defendant) who treated me so cruelly."

As to the facts and the sufficiency of the evidence to support the verdict and judgment, which is to all appearances seriously questioned by the appellant's counsel in the argument and brief here presented, we have this to say,— that to our minds there can be no doubt, not the slightest, of the guilt of the accused of the rape charged, if the testimony in this case was worthy of belief.   That it was, the jury have said under the solemnity of their oaths; that it was, the court below in the discharge of his high trust has said by overruling the motion for new trial based in part upon this ground; and that it is, the statement of facts agreed to by counsel for State and defendant and approved by the court, as contained in this record, fully satisfies us.   Under warrant and authority of law, after a fair and impartial trial, it has been ascertained that defendant has forfeited his life on account of the heinous crime he has committed.   We see no ground or occasion to interfere with the judgment, and it is in all things affirmed.

*Affirmed.*