**Affirmed and Opinion filed June 23, 2015.**



In The

# Fourteenth Court of Appeals

NO. 14-14-00085-CR
NO. 14-14-00087-CR

**CODY CARR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1405759 & 1405761**

# O P I N I O N

Appellant Cody Carr challenges his convictions for aggravated sexual assault of a child, asserting insufficiency of the evidence and contending the "on or about" language in the jury charges allowed the jury to reach a non-unanimous verdict. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The ten-year-old complainant, Jane,[1] is appellant's daughter. According to Jane, one night while she was staying with appellant and her stepmother over Christmas break, appellant came into her room, flipped her onto her belly, and placed his sexual organ in her anus. The next morning, Jane was watching cartoons on television when appellant approached her and asked her if she would like some peanut butter. Jane responded affirmatively. Appellant then placed goggles covered with tape over the child's eyes. According to Jane, appellant confirmed that she could not see. Then, Jane heard appellant leave. When he returned, he asked the child to lick the peanut butter off of what he told her was his finger. Jane concluded the peanut butter was on his sexual organ, not his finger. After three or four licks, the child refused more peanut butter. Appellant then went to take a shower.

Jane told her best friends that her father did something "bad" to her. Jane implored her friends to keep it a secret. Months later, Jane also told her mother about the incidents.

Charged in two indictments with aggravated sexual assault of a child, appellant pleaded "not guilty" to both. The two cases were consolidated for trial. At a trial by jury, the jury found appellant guilty as charged of both offenses. The trial court assessed punishment for each offense at six years' confinement, with the sentences to run concurrently.

## II. ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

In his first and second issues, appellant asserts that the evidence is

---

[1] To protect the privacy of the child-complainant, we identify her by the pseudonym, "Jane."

insufficient to show appellant intentionally or knowingly (1) caused Jane's anus to contact his sexual organ and (2) caused his sexual organ to contact Jane's anus. In particular, appellant asserts that the alleged assaults could not have taken place because witnesses testified that appellant was not alone with Jane during Christmas break, when she alleged the assaults occurred. Appellant also asserts that the evidence is insufficient to show he caused Jane's mouth to contact his sexual organ because the child could not positively identify appellant's sexual organ as the object her mouth touched.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

As is relevant to the instant cases, a person commits aggravated sexual

assault if the person intentionally or knowingly (1) causes the anus of a child younger than fourteen years of age to contact the person's sexual organ, or (2) causes the mouth of a child younger than fourteen years of age to contact the person's sexual organ. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B) (West, Westlaw through 2013 3d C.S.). One indictment alleged that appellant intentionally and knowingly caused his sexual organ to contact Jane's anus. The other indictment alleged that appellant intentionally and knowingly caused his sexual organ to contact Jane's mouth. A child-complainant's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West, Westlaw through 2013 3d C.S.).

**A. The First Incident**

Jane was ten years old and in fifth grade at the time of trial. Jane testified that both incidents took place over Christmas break when she was in second grade. Describing the first incident, she testified that she was alone in a bed in the guestroom at appellant's house when appellant came into the room. According to Jane, there were times when appellant pulled up her shirt and kissed her belly. On this night, appellant pulled down her shorts or underwear and turned her over to where she was on her belly. Jane turned back to her side, but appellant turned her back over onto her belly and proceeded to put his "private part" into her "butt." Jane testified that appellant did this about two or three times, then appellant would stop, and then he repeated the action about three times. Jane testified that it hurt. After appellant finished, he got off the bed and Jane went into the bathroom. Jane testified that when she came out of the bathroom, appellant asked her if she was okay and she told him she was. But, Jane said that her "butt" hurt for a week.

A friend of Jane's, also in fifth grade, testified that Jane told her something bad about Jane's father and asked her to keep it a secret. The friend testified that

4

she kept Jane's secret for awhile but she eventually told her parents because she felt sad for Jane. Jane also eventually told her mother about appellant's actions because she could not "hold it in" anymore. According to Jane's mother, one night Jane informed the mother that she could not sleep. The tone of Jane's voice was very shaky and she looked very sad and scared. Jane's mother asked Jane why she could not sleep and Jane said she needed to disclose "something that her daddy had done that is really, really, really bad." Jane explained that she was unable to use her words to tell her mother, but, through tears, Jane was able to write her mother a note. The note was admitted into evidence and was consistent with Jane's testimony at trial.

After disclosing the assault, Jane saw Dr. Michelle Lyn and a social worker at the Children's Advocacy Center. Dr. Lyn noted that at the time of her evaluation, Jane was reliving events of abuse and was experiencing frequent nightmares.

Jane's testimony alone is sufficient to support the convictions for aggravated sexual assault. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Even so, appellant argues that Jane's testimony is unbelievable because he was not alone with Jane during the Christmas break, when Jane alleged he assaulted her. Jane's mother and appellant's wife both testified that appellant picked up Jane from her mother's home on December 17th and returned Jane to her mother on December 24th. Jane testified that she and her grandfather (appellant's father) shared a queen-sized bed in the guest bedroom in appellant's home during part of the break. According to Jane's grandfather, he was there from December 20th through December 24th. Appellant's wife testified that she and appellant dropped Jane off at her aunt's home to spend the night on December

17th, 18th, and 19th. But, Jane said there were nights that she was at appellant's home when her grandfather was not present. Jane's grandfather's testimony did not establish that Jane was not alone with appellant. Jane and appellant's wife were the only witnesses who testified regarding Jane's location during the first three days of her Christmas break and their testimony conflicted. Appellant's wife also testified that appellant never got out of bed at night during Christmas break. Jane's testimony also conflicted with appellant's in this respect. We presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d at 47. Accordingly, we presume that the jury accepted Jane's testimony that she was alone with appellant and that appellant assaulted her.

The evidence is sufficient to support the jury's verdict on the first offense. *See id.*; *Bargas*, 252 S.W.3d at 888. Appellant's first issue is overruled.

## B. The Second Incident

Jane testified that the morning after appellant assaulted her, appellant approached her and asked her if she wanted peanut butter while she was watching cartoons. Jane responded affirmatively. Appellant left the room, retrieved goggles that had tape over them, placed the goggles over Jane's eyes, and asked her if she could see. According to Jane, she told appellant she could not see. Appellant then held up some fingers and asked her what he was holding up. Jane said she responded "[t]wo, or something like that," and then appellant said, "Okay, you're fine." Jane then heard footsteps and assumed appellant put peanut butter on something before returning. Jane explained that when appellant returned he said, "[h]ere's some peanut butter," and she licked the peanut butter off of something. In her note, Jane said that appellant told her she was licking the peanut butter off of his fingers, but she testified that it did not feel like a finger or spoon or any other

6

type of utensil. After four licks, Jane related that appellant asked Jane if she wanted more peanut butter and she said, "[n]o thank you." According to Jane, appellant then walked into the kitchen and helped her remove the goggles before going upstairs to take a shower.

With her eyes covered, Jane could not see during the peanut butter incident, but she testified that she believed the peanut butter was on appellant's "private part." Jane testified that she and appellant were alone at this time and appellant's wife was at work. Appellant's wife testified that she had the entire Christmas break away from work and she was always awake before appellant. Appellant asserts that the evidence is legally insufficient to support his conviction under the second indictment because the evidence shows he was not alone with Jane and because, although Jane concluded that she licked peanut butter off of appellant's sexual organ, Jane did not see it and could not describe the way it felt.

Jane's testimony conflicted with appellant's wife's testimony regarding the wife's presence in the home at the time of the incident. We presume the jury resolved the conflict in the evidence in favor of the prevailing party. *Turro*, 867 S.W.2d at 47. We presume the jury believed Jane's testimony that the assault occurred and that the jury discounted appellant's wife's testimony that it did not. *See Fuentes*, 991 S.W.2d at 271.

Relying on her senses other than vision, Jane was able to say that the surface from which she licked the peanut butter did not feel like a finger, a spoon, or any other kind of utensil. Although Jane testified that she did not see appellant's sexual organ and, although she could not describe it (other than distinguishing it from the objects identified above), she concluded appellant had her lick peanut butter off his sexual organ and the evidence is sufficient for the jury to have determined Jane was correct in her assessment. *See Villalon*, 791 S.W.2d 130, 134

7

(Tex. Crim. App. 1990) (noting that child-complainants are not expected to testify with the same clarity and ability as is expected of adults); *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.) (holding that complainant's failure to make in-court identification of defendant went to the weight and credibility of the witnesses and concluding circumstantial evidence was sufficient to uphold defendant's conviction). First, we note that Jane was consistent in her conclusion. In her note to her mother, Jane wrote that appellant put peanut butter on his "thing" and asked her to lick it off. In this note, she used the term "thing" to describe appellant's sexual organ in the context of the first assault. Second, the timing of the second assault lends credibility to Jane's conclusion. The second assault occurred the morning after the first assault. The jury could have concluded that, even though Jane did not see appellant's sexual organ, she was able to conclude that it was his sexual organ based on having been assaulted the night before. Third, Jane wrote that appellant told her she was licking peanut butter off of his finger, but using sensory input, Jane concluded it did not feel like a finger. Based on this evidence, the jury could have concluded that appellant lied to Jane, a fact that supports Jane's conclusion that appellant had her lick peanut butter off his sexual organ. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (noting that lies are indicative of consciousness of guilt). Finally, appellant's actions in placing goggles over Jane's eyes so that she was unable to see what appellant was doing bolster's Jane's conclusion that appellant was asking her to lick his sexual organ. *See Word v. State*, 12 Tex. Ct. App. 174, 183 (1882) (noting that defendants who render their victims insensible should not be freed simply because the victim cannot swear positively to the act of penetration). This evidence is sufficient for the jury to have concluded that appellant caused Jane's mouth to contact his sexual organ. *See Villalon*, 791 S.W.2d at 134. Appellant's second issue is overruled.

## C. "On or about" Language in Indictments

In his third issue, appellant asserts that the trial court erred in charging the jury that there were no limitations periods for the offenses. Appellant argues that the "on or about" language and the instruction that there is no limitations period for the offense allowed for a non-unanimous jury verdict because the members of the jury could have convicted him even though they did not unanimously agree on the factual elements underlying any specific offense.

The jury received two separate charges relating to the two separate indictments. Both charges begin with the words: "The defendant, Cody Carr, stands charged by indictment with the offense of aggravated sexual assault of a child, alleged to have been committed on or about the 20th day of December, 2010, in Harris County, Texas." One charge defines aggravated sexual assault as "intentionally or knowingly caus[ing] the mouth of a child to contact the sexual organ of another person." The other charge defines aggravated sexual assault as "intentionally or knowingly caus[ing] the anus of a child to contact the sexual organ of another person." The jury received two separate charges detailing separate offenses. Both charges instructed the jury that its verdict must be unanimous.

The State need not allege a specific date in an indictment. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). The "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *Id.* Texas law requires that a jury reach a unanimous verdict about the specific crime the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). This means that the jury must agree upon a single and discrete incident that would constitute the commission of

9

the offense alleged. *Id.* Non-unanimity may result in certain instances when the jury charge fails to properly instruct the jury, based on the indicted offenses, and specific evidence in the case, that the verdict must be unanimous.

Non-unanimity may occur when the State charges one offense, but presents evidence that the defendant committed the charged offense on multiple but separate occasions or the State charges one offense and presents evidence of an offense committed at a different time that violates a different provision of the same criminal statute. *Id.* at 772. In the first scenario, each of the multiple incidents individually establishes a different offense and to ensure unanimity in this situation, the charge would need to instruct the jury that its verdict must be unanimous as to a single offense among those presented. *Id.* In the second scenario, the charge would need to instruct the jury that it has to be unanimous about which statutory provision, among those available, the accused violated.

In the instant cases, the jury received two separate charges and the evidence at trial was limited to evidence of two separate, discrete offenses. There is evidence of one instance in which appellant caused Jane's anus to contact his sexual organ and there is one charge related to that conduct. This charge instructed the jury that its verdict must be unanimous as to that charge. There is also evidence of one instance in which appellant caused Jane's mouth to contact appellant's sexual organ and there is one charge related to that conduct. This charge instructed the jury that its verdict must be unanimous as to this charge. There is no evidence of other actions that occurred at other times that could constitute these offenses and cause the jury to agree that either offense had occurred and disagree on the facts underlying the offense. To convict appellant of either offense, the jury had to agree on the factual elements underlying the conviction. The jury convicted appellant of both offenses. In neither case did the

10

charge allow the jury to reach a non-unanimous verdict. *See id.* at 772; *Sledge,* 953 S.W.2d at 256. The trial court did not err in providing the charges to the jury. Appellant's third issue is overruled.

### III. CONCLUSION

Appellant's convictions are supported by sufficient evidence. The trial court did not err in charging the jury on the statute of limitations. The judgment of the trial court is affirmed.

Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Publish — TEX. R. APP. P. 47.2(b).