In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00159-CR
_____

BERNARD ELBERT HOPKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 411th District Court
San Jacinto County, Texas
Trial Cause No. 11,723**

_____

**MEMORANDUM OPINION**

A jury found Bernard Elbert Hopkins (Hopkins or Appellant) guilty of continuous sexual assault of a child and assessed his punishment at imprisonment for life. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2016). On appeal, Hopkins challenges the sufficiency of the evidence supporting his conviction. We affirm.

1

The indictment alleged that Hopkins committed the offense of continuous sexual abuse of a child, B.C., who was younger than fourteen years of age:[1,2]

> . . . BERNARD ELBERT HOPKINS, hereinafter styled Defendant, on or about the 22nd day of June, 2015, and before the presentment of this indictment, in the County and State aforesaid, did then and there during a period that was 30 or more days in duration, to-wit: from on or about December 1, 2007 through September 8, 2013, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child or children younger than 14 years of age, namely then and there intentionally and knowingly cause the penetration of the anus of [B.C.], a child who was then and there younger than 14 years of age, by the means of defendant's sexual organ.

### Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we review all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable

---

[1] Hopkins was also charged by indictment with two counts of aggravated sexual assault of a child (Counts II and III), but the State abandoned those counts and Hopkins was tried only for the charge of continuous sexual abuse of a child (Count I).

[2] We use initials to refer to the alleged victim and family members. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process.").

doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318-19). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id.* We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We may not substitute our judgment for that of the fact-finder concerning the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We permit juries to draw multiple inferences from facts as long as each inference is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360.

> A person commits the offense of continuous sexual abuse of a child if:
>
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

Tex. Penal Code Ann. § 21.02(b). Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offense of aggravated sexual assault. *Id.* § 21.02(c)(4). A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means and the victim is

3

younger than fourteen years of age. *Id.* § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2016). The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Sufficiency of the Evidence

On appeal, Hopkins argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that, during a period of thirty days or longer in duration, Hopkins committed two or more acts of sexual abuse against B.C. by intentionally and knowingly causing the penetration of her anus by means of his sexual organ. B.C., who was eleven years old at the time of the trial, testified that Hopkins was her stepfather and that she was born on September 9, 2004. B.C. testified as follows:

> Q. Can you please tell us what it was that made you uncomfortable that Bernard did?
>
> A. He touched me on my private parts.
>
> Q. Okay. Now, when you say he touched you in your private parts, just so everybody understands, what private parts are we talking about?
> A. My front and my back.
>
> Q. Your front and your back. Your back, is it used for something?

4

A. My back is used to sit on and my front is used to use the bathroom.

Q. Is there any name that you use for your back?

A. Butt.

. . . .

Q. Okay. What did you say Bernard did that made you uncomfortable?

A. He touched me in my private parts.

Q. Now, when you say he touched you, it's important we understand.

A. With his private parts and his hands.

Q. Okay. Now, when he touched you with his private parts, do you know - - when you say "private parts," what are we talking about?

A. His front.

Q. Is that the top part of his body or lower?

A. Lower.

Q. What does he use that part for?

A. Use the bathroom.

Q. Okay. When he touched you, you say he touched you with that?

A. Yes.

Q. Where did he touch you with that?

A. Front and back.

5

Q. Can you tell us how he touched you with that?

A. He put it in me.

. . . .

Q. Where would he put it in you?

A. In the front and back.

. . . .

Q. Do you remember the first time . . . something was done to make you uncomfortable, can you tell us when that was?

A. I was around 3 or 4.

Q. Can you tell us at that time how Bernard touched you?

A. He touched me in the front with his private part; but I didn't like it, so I turned over.

Q. What happened after you turned over?

A. His private touched by back private part.

Q. How did it touch your back private part? Do you remember?

A. He put it in me.

Q. . . . How did it feel?

A. It hurt.

. . . .

Q. Now, that was the first time that you can remember something happening?

6

A. That's the first time I can remember.

B.C. testified that she also remembered an occasion which was before a pool party on her sixth birthday. B.C. explained to the jury what happened that day in the trailer where she lived:

Q. Can you tell me what [Hopkins] did?

A. He - - he touched me in the front and the back.

Q. Okay. Now, when he touched you again, what did he touch you with?

A. His hand and his private part.

Q. Okay. Can you tell me, if you remember, how he touched you?

A. He would stick his hand in my private inside me.

Q. In both places that we talked about?

A. Yeah.

Q. Okay. What are those places called again?

A. The butt.

Q. Did he stick his private part in your butt?

A. Yes.

B.C. explained that she was on the floor when he assaulted her that day, "[i]t hurt really bad[,]" and she "didn't want to see nothing, so [she] grabbed a pillow and put

7

[her] face in it." She testified that after he assaulted her he told her, "If you tell anyone, I will hurt you[,]" and that he had made similar statements to her in the past.

According to B.C., she could not remember if the sexual assaults happened daily or weekly, but she knew "it happened multiple times[,]" and that the last time he sexually assaulted her was when she was "around 8 or 9[.]" She further recalled that at some point the assaults ended after Hopkins's colon ruptured and he had to get a colostomy bag. When asked if she could remember any details of the last incident, she responded, "I tried to forget the details because I don't want to remember, so it's hard to remember[.]"

B.C. testified that she told her mother about the sexual assaults by Hopkins when she was ten years old. B.C. explained that she had gone to church and learned in her "Bible study little group" that they "had to forgive people[,]" and on the car ride home she "thought to [her]self, one day I will have to forgive [Hopkins]; but I need to tell. I have to tell people so I can forgive." B.C. testified that her mother was very upset and confronted Hopkins in B.C.'s presence, and Hopkins admitted to B.C.'s mother what he had done to B.C.

During cross-examination, B.C. acknowledged that she could not see what he put "in [her] butt[,]" but explained that she was "laying on [her] side[]" and she could not see "because it was the other way." When defense counsel questioned B.C., she

8

could not say "for sure" what Hopkins "put in [her] butt[]" during the incident on her sixth birthday, and explained that she was "on the floor[]" and "kind of[]" on her stomach. On redirect examination, when B.C. was asked whether on the day of the pool party she saw Hopkins's hands when "he touched [her] with his hand in [her] front private part[]" she responded, "No, but it felt smaller[.]"

Hopkins complains that, although section 22.021(a)(1)(B)(i) defines aggravated sexual assault of a child to include the intentional or knowing penetration of the anus of the child by any means, the evidence was insufficient to prove beyond a reasonable doubt that he penetrated B.C.'s anus with his sexual organ, as alleged in the indictment. In arguing the insufficiency of the evidence supporting his conviction, Hopkins contends that, although B.C. testified on direct examination that he penetrated her anus with his sexual organ during the sexual assaults when she was around three or four years old, B.C. testified that she did not know whether Hopkins had penetrated her butt with his sexual organ, or with his fingers, or with his thumb on her sixth birthday. Hopkins also argues that, although B.C. and B.C.'s mother testified that he admitted touching B.C., "[n]either is an admission . . . that he caused the penetration of the anus of [B.C.] by means of his sexual organ." Hopkins further asserts that "the absence of evidence of bleeding or physical injury suggests that [he] did not cause the penetration of the anus of [B.C.] by means of his sexual organ."

9

B.C.'s mother, A.C., testified that at the time of trial Hopkins was forty-seven years old. A.C. testified that they had just gotten back from Vacation Bible School in June 2015, and B.C. was upset and told her that Hopkins had molested her from when she was three until she was nine. A.C. confronted Hopkins when he arrived home, and according to A.C., Hopkins admitted to molesting B.C. and told B.C. he was sorry. A.C. testified that she was scared and that two days later, after packing she planned to leave Hopkins and called the police regarding B.C.'s outcry.

W.M., a forensic interviewer with Children's Safe Harbor, testified that she interviewed B.C. when B.C. was ten years old. According to W.M., B.C. told W.M. that Hopkins had molested B.C. for six years and that he molested her "once or twice a week, sometimes more." W.M. testified that B.C. reported that when B.C. was three that Hopkins "stuck his finger in her butt only[]" and that when B.C. was six "he put his private part that he uses to pee in her butt and that he used his finger in her private part she uses to pee."

Jamie Ferrell, the Clinical Director of Forensic Nursing Services at Hermann Memorial Health System and certified sexual assault nurse examiner (SANE), testified that she examined B.C. at Children's Safe Harbor in Conroe when B.C. was ten years old. Ferrell explained that she would not have attempted to collect physical evidence during the exam because the only time physical evidence is collected is if

the victim is seen within ninety-six hours of when the last incident occurred, and B.C. reported that the last incident occurred when she was nine. Ferrell testified that during her physical assessment of B.C., Ferrell noted that there were no injuries to B.C.'s body or genitals. Ferrell explained, however, that a lack of injuries or physical evidence is not unusual or surprising given the nature of B.C.'s allegations and that the last reported assault of B.C. was more than a year prior to the exam. Ferrell noted that B.C. was scared and tearful, that there are many reasons victims have delayed outcries, and that Ferrell recommended that B.C. be tested for sexually transmitted diseases and that she go to counseling. H.H., B.C.'s step-sister and Hopkins's daughter, testified that after B.C.'s outcry Hopkins called H.H. and told her CPS would be investigating Hopkins. Hopkins also told H.H. that if H.H. told the truth to CPS, he would probably go to jail.

As part of his sufficiency challenge, Hopkins asserts that "even had the State proven at trial that Hopkins caused the penetration of the anus of [B.C.] by means of his sexual organ during the incident when she was 3, and it did not, *or* had the State proven that Hopkins caused the penetration of the anus of [B.C.] by means of his sexual organ during the incident when she was 6, and it did not, *but not both*, the evidence would have been insufficient." As detailed above, B.C. testified that Hopkins would touch her on her private parts by putting his front private parts that

11

he uses to go to the bathroom in her private parts in her "front and back[,]" and that he also touched her private parts with his hands. She testified that, when she was three or four years old, he put his private part in her front private part and she rolled over and he "touched [her] back private part[]" by "put[ting] it in [her]" and it hurt. She also testified that when she was six years old, Hopkins put his "private part" in her butt. B.C. testified that Hopkins touched her and made her uncomfortable from age three to age eight or nine, and that she could not remember whether the incidents when he made her uncomfortable happened every day or every week but that she knew it happened "multiple times." She explained that she remembered other incidents "but not by details, not what happened, because I try to forget most of it." Additionally, Ferrell, a forensic nurse and SANE, testified that B.C. told Ferrell that the abuse continued from when B.C. was three years old until B.C. was almost nine years old, and B.C. told Ferrell that Hopkins "put his private in [B.C.'s] butt[,]" and "[i]t would hurt."

Hopkins argues that B.C.'s testimony is not enough to support his conviction because her testimony was inconsistent in that she admitted under cross-examination that she did not see what Hopkins used to penetrate her anus on the occasions when she was three and six. The weight to be given contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of

12

credibility and demeanor. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *see also*, *e.g., Reed v. State*, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd) (evidence sufficient to support aggravated sexual assault of a child conviction based on victim's testimony even though the testimony was contradictory). As the fact-finder, the jury is entitled to judge the credibility of each witness, and the jury may accept some portions of a witness's testimony and reject other portions. *See Hughes v. St*ate, 897 S.W.2d 285, 289 (Tex. Crim. App. 1994). A child victim's testimony is sufficient to support a conviction for sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (West Supp. 2016); *Carr v. State*, 477 S.W.3d 335, 338 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). As for Appellant's argument that the lack of evidence of physical injury suggests that he did not penetrate the child's anus with his sexual organ, "[t]he lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence." *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). The jury heard testimony from Ferrell, a forensic nurse and SANE, that she conducted the exam on B.C. more than a year after the last alleged sexual assault by Hopkins and that, given the nature of the allegations in this case, it is not unusual that there would be an absence of physical injuries.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found the essential elements of the offense of continuous sexual abuse of a child beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 912; *Hooper*, 214 S.W.3d at 13.[3] We overrule Appellant's issue and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 28, 2016
Opinion Delivered March 1, 2017
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

---

[3] Because we find the evidence sufficient to support the conviction, we need not address Appellant's assertion that the "discrepancy between the allegations of the indictment and the proof presented at trial[]" created a fatal variance. *See* Tex. R. App. P. 47.1.

14