In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00104-CR**
_____

**DAVID ANTHONY HUMPHRIES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 16-24572**

**MEMORANDUM OPINION**

A grand jury indicted David Anthony Humphries for indecency with a child

by sexual contact, a second-degree felony. *See* Tex. Penal Code Ann. § 21.11(a)(1)

(West Supp. 2018).[1] The State filed a notice to enhance Humphries' sentence to a

first-degree felony based on an alleged prior conviction for burglary of a habitation.

A jury found Humphries guilty, Humphries pleaded "true" to the enhancement

---

[1] We cite current versions of the statutes because subsequent amendments do not affect our disposition.

1

allegation, and the jury assessed punishment at thirty-five years in prison and a fine of $10,000. Humphries raises eight issues on appeal. We affirm the trial court's judgment.

Background and Evidence at Trial

A grand jury indicted Humphries for the offense of indecency with a child by sexual contact. The indictment alleged that Humphries

> . . . on or about the 26th day of February, two thousand and sixteen . . . did then and there, with the intent to arouse or gratify the sexual desire of said Defendant, engage in sexual contact with [A.B.],[2] by touching the genitals of [A.B.], a child younger than 17 years of age[.]

Humphries pleaded "not guilty."

<u>Testimony of A.B.</u>

A.B. testified that in February 2016, she was six years old and went to Academy with her mother and sister to buy her sister some softball pants. A.B. testified that she became bored while they were looking at the softball pants, and A.B. asked her mother if she could go over and look at the nearby softballs. According to A.B., while A.B. was looking at the softballs, a man she did not know wearing a black jacket walked by and "touched [her] private[]" with his hand and

---

[2] We use initials to refer to the victims and family members. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

then he left. A.B. testified that her "private" means the part of her body that she uses to "use the bathroom[]" and go "[n]umber one[,]" and she identified the genital area on a doll as her "private." A.B. testified that she was standing up facing the aisle looking at the softballs when the man walked up behind her, reached out to her and touched her private area and said, "I love this." According to A.B., she was "[v]ery, very scared[,]" and she ran to tell her mother. A.B. testified that she did not trip or fall at Academy. A.B. identified Humphries at trial as the man that came up to her and touched her "private" at Academy.

Testimony of J.E.

J.E., A.B.'s mother, testified that she and her daughters went to Academy to buy one of her daughters some softball pants. According to J.E., while they were looking at softball pants on the main aisle, A.B. asked if she could go around the corner and get one of the softballs to play with, and J.E. said "[s]ure." J.E. testified A.B. went around the corner and came back, and while J.E. was talking to the mother of one of A.B.'s classmates, A.B. asked if she could look at the softballs again and J.E. agreed. According to J.E., A.B. returned the second time crying and was "hysterical[,]" and J.E. asked A.B. what was wrong. A.B. told her "That man over there touched my tee-tee[]" and pointed to a man. J.E. testified she was extremely angry and she went to confront the man. She testified that she said to the man, "Did

3

you just touch my child?" J.E. testified that the man just shrugged his shoulders, and she took off after the man as he started to run. She was screaming "call 911" and "That man just touched my child sexually. She's 5." J.E. testified that at some point she told the man "You just touched my child sexually. You're not going to get away[,]" and she grabbed him by his jacket and they struggled at the front of the store. According to J.E., Humphries unsuccessfully tried to leave the store before the police arrived. J.E. identified Humphries as the man that she struggled with at Academy.

Testimony of P.S.

P.S. testified that on the date in question she was working in the men's apparel department at Academy. According to P.S., she was on the computer looking for an item when she saw the reflection of a man standing pretty close behind her and rubbing his penis with his pants "open in the middle[.]" P.S. testified that she felt "[s]hocked[]" and uncomfortable, she ran to the front to customer service to tell her managers, and her managers went looking for the man. P.S. testified that she heard "one of the moms" say, "Stop him!" When she saw the man at the front of the store, he had the same figure, hat, and shirt as the man that she had reported to her managers, but he had put on a jacket. At trial, P.S. identified Humphries as the man she had reported to her managers.

4

Testimony of K.S.

Ten-year-old K.S. testified that she was at Academy the same day with her father getting new softball pants and cleats. According to K.S., while she was looking at cleats "a man came around" and "touched [her] in [her] private part and on [her] bottom." She explained that her "private part" is the part of her body she uses to "go use the restroom[]" and that her bottom is the part of her body that she sits on. She identified the genital area on a doll as the area that she calls her "private part" and the backside of the doll as the part she calls her "bottom." K.S. explained that she was about to get up from a bench and her father had his back to her and was looking at cleats, and that is when the man touched her on her private part with his hand in a moving motion for a couple of seconds, and he mumbled "[e]xcuse me[,]" and left. K.S. testified that the man came back around the aisle and then he touched her bottom with his hand when she was standing in front of the bench, then he said "excuse me[,]" winked, stuck his tongue out at her, and then left again. According to K.S., she was worried and "had butterflies in [her] stomach[]" and went and told her father that a man "touched [her] in bad spots that [she] did not like" and that she was scared. K.S. testified that her father was mad and that he and one of her softball teammate's mothers tried to stop the man from leaving the store. At trial, K.S. identified Humphries as the man who had touched her.

5

Testimony of S.S.

S.S. testified that he was at Academy with his daughter, K.S., that day and they were in the shoe department looking at cleats. He had his back to K.S. for part of the time, and at some point, he turned to her behind him, saw a shocked look on her face, and asked her what was wrong. According to S.S., K.S. said, "Daddy, don't let that man touch me again. Don't let him touch my privates again." S.S. testified that K.S. told him that a man had passed her twice and "[o]nce he had touched her behind and once he had touched her inappropriately from the front[.]" According to S.S., he took K.S. to an employee and then went looking for the man that K.S. had described. S.S. testified that he was on his way to the front entrance when he saw a man that matched K.S.'s description, and he saw that a woman had a hold of the man's jacket and was exclaiming that the man had touched her daughter inappropriately. S.S. testified that the man tried to leave the store, but S.S. physically prevented him from leaving. S.S. testified that the man was "[s]urprisingly calm[]" and told them he had not done anything, and he needed to leave.

Testimony of Rachel Luce

Rachel Luce, a senior loss prevention investigator for Academy, testified that she reviewed the store surveillance video from the day of the incident and she assisted in having the video copied onto a jump drive. Luce testified that the jump

6

drive contained an accurate recording of the events that took place that day. The jump drive was admitted into evidence and published to the jury. As the video played for the jury, Luce described the portion of the video that showed an individual who appeared to be touching his crotch when he was standing behind P.S. while P.S. was at a mobile computer, and she also testified that the video showed that same individual in a black and gray Columbia jacket that she believed he stole once P.S. left the department. Luce also testified that the video showed a little girl and her father in the shoe department at the same time as the man who had stolen the jacket but that there was no surveillance camera on that aisle, and that the video showed the same man when he walked behind a different little girl near the softballs.

Testimony of Reid Rowe

Sergeant Reid Rowe with the Port Arthur Police Department testified that he was the first officer to arrive at Academy that day. According to Sergeant Rowe, a store employee and another female approached Rowe when he walked in and people were pointing to a man, who Rowe identified at trial as Humphries. Sergeant Rowe testified that the large crowd in the store seemed agitated with Humphries. Rowe listened to the allegations against Humphries and pulled Humphries off to the side away from the crowd while other responding officers were arriving and speaking with other people. Sergeant Rowe testified that, according to Rowe's report from

7

that day, Humphries told Sergeant Rowe, "I think they must think I'm someone else." Sergeant Rowe testified that Humphries acted like he did not know what was going on. Sergeant Rowe testified that once Detective May arrived, Rowe did not have any further involvement because May took over, and Officers Lapeyrolerie and Thomason were doing "the main report."

Testimony of Eric Thomason

Officer Eric Thomason with the Port Arthur Police Department testified that he and Officer Lapeyrolerie responded to a call about "a large fight at Academy." According to Thomason, Sergeant Rowe was already there and was talking with a white male, identified at trial as Humphries, and there was a crowd in the store that was "amped up[.]" Thomason testified that Detective May took over the investigation when he arrived, and at May's request, Officer Thomason took photographs of Humphries and the two alleged victims.

Testimony of Ashley Lapeyrolerie

Officer Ashley Lapeyrolerie with the Port Arthur Police Department testified that on the date in question she was training with Officer Thomason when they were dispatched to Academy. According to Lapeyrolerie, when they arrived, the mood was "[c]haotic[]" inside the store and Sergeant Rowe was inside speaking with Humphries. Lapeyrolerie testified that while Humphries was detained his demeanor

8

was "stressed[]" but cooperative. Lapeyrolerie testified that Detective May arrived at the scene later and took over the investigation, and Thomason and Lapeyrolerie ultimately transported Humphries to the Port Arthur Police Department for questioning.

Testimony of John Keith May

John Keith May, a retired detective with the Port Arthur Police Department, testified that he was working when he was called to Academy. He spoke to Humphries and later interviewed Humphries at the police department. According to May, at the time of the interview he advised Humphries of his rights and Humphries indicated that he understood those rights and agreed to waive those rights to speak to May. A redacted version of the video recording of the interview was admitted into evidence and a portion was played for the jury. May testified that Humphries told him that he was suffering from low blood sugar and was diabetic, and May provided Humphries with a Coke for his low blood sugar even though Humphries' claim of low blood sugar was "not necessarily something [May] believed[]" based on Humphries' actions and May's experience with people suffering from diabetes or low blood sugar. May testified that Humphries acted "[n]ervous[]" during the interview and that his version of the events involving A.B. was inconsistent with May's review of the Academy surveillance video. According to May, Humphries

9

told him that A.B. had walked toward Humphries and that she looked like she was going to fall and he reached his left hand out to keep her from falling. May testified that, contrary to the version of events told by Humphries, the Academy surveillance video showed Humphries following or "stalking[]" A.B., and it showed Humphries walking towards her and it showed A.B. being stationary. According to Detective May, the camera view of A.B. shows her hand reach for something on the display shelf but a pole in the aisle was blocking the camera's view of A.B., and then it showed Humphries deliberately bending down to A.B. and standing back up as if he was blocking her from leaving.

Testimony of Humphries

Humphries testified that at the time of the incident, he was homeless and had been living outside behind the Academy for a couple of weeks. According to Appellant, he ran out of money and stole food from the nearby Walmart and went into Academy to "swap [his clothes] out." Appellant testified that he had been drinking for two weeks, and that he had also been drinking earlier that day before entering Academy around 5:00 p.m. According to Appellant, "it was freezing and I had to go get a jacket."

Appellant testified he was in the men's department and saw P.S., an employee of Academy, at the computer and he noticed the jackets nearby. After it appeared

10

she left the department, Appellant checked, and once he was sure she had left the department, he went back to the jackets. Appellant testified that he stole a gray jacket and put it on. According to Appellant, he left the men's department and headed "[t]owards shoes[]" because he "was considering swapping out [his] shoes." Appellant testified that he left the shoe department and started heading towards the front of the store but when he was near the baseball aisle, he noticed employees at the front, and he turned onto the baseball aisle. Appellant testified that he heard K.S.'s father saying he was trying to find Appellant. Appellant testified he saw A.B. on the baseball aisle, and she grabbed a softball and turned to run back. Appellant testified that the little girl tripped in front of him, he "stopped her[,]" he said something to her, and she was startled by him. Appellant testified that A.B. went and found her mother, and as Appellant was heading for the front door, A.B.'s mother screamed at Appellant, "Stop right there!" Appellant testified that he was stopped at the front of the store and was placed into custody. Appellant denied masturbating in P.S.'s presence, denied that he was trying to molest the two children, and denied touching K.S. at all. As for A.B., Appellant admitted he touched her but only for purposes of helping her. Appellant admitted he had been convicted of burglary of a building in 2002, burglary of a habitation in 2006, and indecent exposure in 2011.

11

The jury found Humphries guilty of indecency with a child by sexual contact. Humphries pleaded "true" to the enhancement allegation. The jury assessed punishment at thirty-five years in prison and a fine of $10,000. Humphries appealed.

## Issues on Appeal

In issues one through three, Appellant argues the trial court abused its discretion and committed reversible error by denying Appellant's motion for mistrial "following the prosecutor's highly prejudicial opening statement which also violated Appellant's motion in limine[,]" and that the trial court committed reversible error by giving a curative instruction. In issues four and five, Appellant contends SS.'s testimony was inadmissible under Texas Rule of Evidence 404(b) and that it was unfairly prejudicial under Rule 403, and the trial court abused its discretion in not excluding or limiting S.S.'s testimony. In issues six and seven, Appellant complains about the State's failure to provide meaningful notice of the testimony of S.S. and K.S. In issue eight, Appellant challenges the legal sufficiency of the evidence supporting the jury's verdict.

## Prosecutor's Opening Statement

In Appellant's first three issues, he argues the trial court abused its discretion and committed reversible error in denying Appellant's motion for mistrial and Appellant contends the trial court committed reversible error in instructing the jury

12

that opening statements do not constitute evidence. Before trial and outside the jury's presence, defense counsel presented an oral motion in limine requesting that the State approach the bench before referencing Humphries' past or "prior wrongs[.]" The trial court granted the oral motion in limine. According to Appellant, the prosecutor's opening statement mentioned two other victims of Appellant's alleged sexual misconduct, K.S. and P.S., and a bystander, C.B., in violation of the trial court's ruling on Appellant's motion in limine. On appeal, appellate counsel states that "Defense counsel . . . immediately moved for a mistrial" and "[o]n timely objection by [defense counsel,]" the trial court denied the mistrial.

Contrary to appellate counsel's characterization of the defense making "timely objections" to the alleged violation of the motion in limine during the opening statements, the record demonstrates that defense counsel did not make a timely objection to the complained-of statements made by the prosecutor during the prosecutor's opening statement. The record shows that at the *conclusion* of the prosecutor's opening statement, defense counsel told the trial court that defense counsel "had a matter to be taken outside the presence of the jury[]" and then defense counsel moved for a mistrial and argued that the prosecutor violated the ruling on the motion in limine because the prosecutor had not approached the bench before

13

referencing Appellant's alleged other bad acts or offenses with respect to P.S. and K.S.

A motion in limine is a preliminary matter that, on its own, normally preserves nothing for appellate review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). To preserve error about a subject of a motion in limine, an objection must be made at the time the subject is raised during trial. *Id.* An untimely objection to the violation of a motion in limine does not preserve a complaint for appellate review. *Thomas v. State*, 137 S.W.3d 792, 796 (Tex. App.—Waco 2004, no pet.) (citing *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998)). Similarly, a defendant's failure to object to a jury argument or to pursue an adverse ruling on his objection to a jury argument forfeits his right to complain about the argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). "Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling." *Id.*; *See, e.g.*, *Graham v. State*, 3 S.W.3d 272, 284-85 (Tex. App.—Fort Worth 1999, pet. ref'd) (concluding appellant did not preserve complaint that prosecutor violated motion in limine during opening statement when appellant failed to object at the moment the prosecutor made the objectionable statement). We conclude that

Humphries has not preserved issues one through three for appeal. *See* Tex. R. App. P. 33.1; *Thomas*, 137 S.W.3d at 796. Issues one through three are overruled.

### Admissibility of S.S.'s Testimony Under Rule 403 and Rule 404(b)

In issues four and five, Appellant argues that the trial court abused its discretion in not excluding or limiting S.S.'s testimony because it was inadmissible under Texas Rule of Evidence 404(b) and unfairly prejudicial under Texas Rule of Evidence 403. Appellant states on appeal that defense counsel "timely and frequently raised" Rule 404(b) and 403 objections. Based upon our review of the entire record, it appears that defense counsel did articulate such objections to K.S.'s testimony, but Appellant did not make objections under either rule when S.S. testified at trial. Accordingly, Appellant has not preserved issues four and five for appellate review. *See* Tex. R. App. P. 33.1. Issues four and five are overruled.

### Sufficiency of State's Notice of Testimony of K.S., S.S., and P.S.

In issue six, Appellant argues reversal is appropriate because the trial court abused its discretion in allowing S.S. and K.S. to testify about the charges affecting K.S. because the prosecutor did not provide meaningful notice of their testimony in writing. Appellant contends on appeal that, although the State's notice included Humphries' offense against P.S., the notice "gives almost no specifics not found in witness statements[.]" In issue seven, Appellant contends that because defense

15

counsel did not receive timely notice as required by Rule 404(b) about K.S., S.S., and P.S.'s testimony on Appellant's extraneous offense/bad acts, Appellant could not meaningfully prepare for trial. According to Appellant, this violated his rights under the Sixth and Fourteenth Amendments.

We review the trial court's admission of evidence under an abuse-of-discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Rule 404(b) provides that evidence of other crimes, wrongs, or other acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[]" when the prosecutor provides "reasonable notice before the trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." Tex. R. Evid. 404(b).

The State provided notice to Appellant's trial counsel stating in relevant part as follows:

> 1. The Defendant is currently charged with the offense of Indecency with a Child, a second degree felony, in Cause Numbers 16-24572 and 16-24573.

> 2. Pursuant to Rule 404 of the Texas Rules of Evidence, the undersigned Assistant Criminal District Attorney hereby gives notice

16

to the Defendant and his attorney that the State intends to introduce in the case in chief evidence of other crimes, wrongs, or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident.

. . . .

6. Pursuant to Article 38.37(2) of the Texas Code of Criminal Procedure, the undersigned Assistant Criminal District Attorney hereby gives notice to the Defendant and his attorney that the State intends to introduce in the case in chief, notwithstanding the Rules 404 and 405 of the Texas Rules of Evidence, evidence that the Defendant has committed a separate offense, other crime, wrong, or act for its bearing on relevant matters, including, but not limited to, the character of the Defendant and acts were performed in conformity with the character of the Defendant.

In paragraph seven of the notice, the State listed "[t]he extraneous offenses and/or prior convictions which the State intend[ed] to introduce at trial pursuant to Rules 404 and 609 and Articles 37.07 and 38.37[.]" One of the extraneous offenses was "Cause Number []310642 [for] indecent exposure." The State alleged in its notice that it had occurred on August 29, 2002, in Jefferson County, Texas, but the notice listed the charge as still "[p]ending[.]" The State explained at trial that the date listed in the notice was incorrect, but the cause number was correct and the listed extraneous act was the offense against P.S. that day at Academy. Defense counsel agreed that although the offense date of Humphries' alleged offense against P.S. was incorrect on the State's notice, defense counsel was not confused as to the State's notice of intent to introduce the extraneous offense of the indecent exposure.

17

The trial court found that the correct cause number provided defense counsel with sufficient notice as to Humphries' extraneous offense and the State's intent to introduce evidence about the offense.

The State argued that even if the offense against K.S. was not specifically listed in a separate cause number in the notice, the State had already told defense counsel that the State intended to consolidate the prosecution of Humphries' offense against K.S. with the prosecution of Humphries for the offense against A.B. Additionally, the State explained to the trial court that on the same date that the State gave its notice of the intent to use the extraneous offenses in Cause No. 16-24572 it gave a notice to Humphries' same attorney about Cause No. 16-24573. Humphries objected to the consolidation. The State also explained to the trial court that the discovery in all three cases (Humphries' offenses against A.B., K.S., and P.S. that day at Academy) had been turned over to defense counsel, who was representing Humphries in all three cases, and defense counsel acknowledged at trial that he had received the discovery. In ruling that the notice was sufficient, the trial court noted:

> But I do find that it is admissible, that, number one, you have been given sufficient notice by inference, by actual, by even if the State did not use the exact words "we intend to use the complainant's testimony under [Humphries' offense against K.S.] in [the present case] and vice versa, depending on which case is tried first," it wasn't necessary because of the information that they have given to you that plainly showed that their intent was to try both of these together from the outset, which would have put you on notice that their master plan here and strategy

18

was to present both cases at the same time. You objected to that yesterday, and it would have been a fair understanding. You have all the discovery. It would have been a fair inference to expect that this would have been argued for 404[b] purposes. And, also, the event from [P.S.]'s testimony was actually given in enough specificity in their motion - - in their notice to use extraneous acts to put you on notice.[3]

On this record, we cannot say that the trial court abused its discretion in overruling the complaint made by defense counsel's complaint regarding the alleged deficiencies in the notice and admitting the testimony of P.S., K.S., or S.S. We overrule issues six and seven.

## Sufficiency of the Evidence

In issue eight, Appellant challenges the legal sufficiency of the evidence supporting the jury's verdict. According to Appellant, "[i]ncidental (or accidental) contact by Appellant . . . with his hand (not a finger) touching either girl's genital area for 2 seconds through layers of clothing" is not legally sufficient evidence to support his conviction.

In reviewing the legal sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the

---

[3] The trial court also found that the testimony "is probative especially towards the intent element in this indictment" and the trial court concluded that the probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by other considerations reflected under Rule 403 of the Texas Rules of Evidence and, therefore, is admissible.

19

*Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 319). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To establish the offense of indecency with a child by contact, the State had to prove that Appellant engaged in sexual contact with A.B., a child younger than seventeen years of age. *See* Tex. Penal Code Ann. § 21.11(a)(1). Section 21.11's definition of "sexual contact" includes the act, if committed with the intent to arouse or gratify the sexual desire of any person, of "any touching by a person, including touching through clothing, of . . . any part of the genitals of a child[.]" *Id.* § 21.11(c)(1). The testimony of either a child victim or an outcry witness is sufficient to support a conviction for indecency. *Jones v. State*, 428 S.W.3d 163, 169-70 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2018). The State has no burden to produce any corroborating or physical evidence. *See Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) (concluding that medical or physical evidence is not required to corroborate child victim's testimony).

Courts give wide latitude to testimony provided by child victims of sexual abuse. *See Jones*, 428 S.W.3d at 169; *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). We liberally construe such testimony.

*See Lee*, 176 S.W.3d at 457; *see also Gonzalez Soto*, 267 S.W.3d at 332 ("The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult."). The requisite intent for the offense of indecency with a child can be inferred from the defendant's conduct and remarks and all of the surrounding circumstances. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992) ("[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Gonzalez Soto*, 267 S.W.3d at 332; *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2007 pet. ref'd).

The jury heard A.B. testify that when she was looking at the softballs Humphries walked by and "touched [her] private[]" with his hand and said "I love this[]" while touching her private area. The jury also watched the surveillance video and portions of Detective May's videotaped interview of Humphries. The jury heard Humphries' testimony that he did not intend to touch A.B. inappropriately, but instead was reaching out to A.B. to help her as she was falling. The jury heard Detective May describe the inconsistencies between Humphries' version of events and what Academy's surveillance cameras showed.

On this record, we cannot say the State failed to present evidence that Humphries, with the intent to arouse or gratify his sexual desire, touched a part of A.B.'s genitals through her clothing. The jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. The jury was free to disbelieve Appellant's testimony that he was trying to help A.B. or that he only accidentally touched A.B. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Additionally, A.B.'s testimony alone was sufficient to support a conviction for indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Carr v. State*, 477 S.W.3d 335, 338 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We overrule Humphries' challenge to the legal sufficiency of the evidence. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *see also* Tex. Code Crim. Proc. Ann. art. 38.07. Issue eight is overruled.

Having overruled all the issues raised by the Appellant, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

23

Submitted on June 27, 2018
Opinion Delivered February 13, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.