In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00295-CR**
_____

**ALBERT WENDELL SELLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. F19-33290**

_____

**MEMORANDUM OPINION**

Appellant Albert Wendell Sells ("Sells" or "Appellant") appeals his conviction for the offense of continuous sexual abuse of a child, a first-degree felony punishable by five to ninety-nine years or life imprisonment and a fine not exceeding $10,000. *See* Tex. Penal Code Ann. §§ 12.32, 21.02(b). As we construe his brief, Sells complains that the trial court erred in admitting the testimony of one of Sells' other alleged victims, and in failing to include a limiting instruction in the court's

1

charge to the jury. Sells further contends that the evidence was insufficient to sustain Sells' conviction. For the reasons explained below, we affirm the trial court's judgment.

## BACKGROUND

A grand jury indicted Sells for the offense of continuous sexual abuse of a child, alleging that Sells:

> during a period that was thirty (30) or more days in duration, to-wit: from on or about the 1ST day of SEPTEMBER, TWO THOUSAND AND SEVEN through on or about the 9TH day of JUNE, TWO THOUSAND AND TEN, and anterior to the presentment of this indictment, when the Defendant was 17 years of age or older, did then and there commit two or more acts of sexual [] abuse against [TRACY],[1] a child then and there younger than 14 years of age hereafter styled the Complainant, namely, Aggravated Sexual Assault under Texas Penal Code Section 22.021, and Indecency with a Child under Texas Penal Code Section 21.11(a)(1), namely:
>
> The Defendant, with the intent to arouse or gratify the sexual desire of any person, did then and there engage in sexual contact with the Complainant, by touching the Complainant's genitals; and
>
> The Defendant, with the intent to arouse or gratify the sexual desire of any person, did then and there engage in sexual contact with the Complainant, by causing the Complainant to touch the Defendant's genitals; and

---

[1] We use pseudonyms to refer to the victims, including the complainant, a minor, and we refer to the victims' family members other than Sells by pseudonyms or familial relationships to protect all victims' privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

The Defendant, did then and there, intentionally or knowingly cause the penetration of the sexual organ of the Complainant, by inserting the Defendant's finger[.]

See id. § 21.02(b), (c)(2), (4); see also id. §§ 21.11(a)(1), 22.021(a)(1)(B)(i).

The trial was to the jury for both guilt-innocence and punishment. After the jury convicted Sells of the offenses charged and assessed punishment at forty-three years imprisonment, the trial court sentenced Sells accordingly. We summarize the evidence below.

"Tracy's" Testimony

Tracy, the complainant, testified that she was Sells' former stepdaughter. Tracy recalled that she met Sells when she was about five years old, and that she initially liked him and thought "[h]e was nice." When Tracy was five to seven years old, Sells penetrated Tracy's vagina with his finger, and when Tracy was ten to twelve years old, the sexual abuse "kept going on[.]" Tracy described an incident in about 2009, when she was eleven or twelve years old, when Sells pinned Tracy on a bed, got on top of her, and began "grinding" on her. Although both Tracy and Sells were clothed at that time, Tracy recalled that she could feel Sells' penis rubbing against her vagina. Tracy also recalled that Sells would often "touch [her] on the butt or something or grab [her], you know, [her] breast or something in that nature." Tracy did not disclose Sells' abuse until she was eighteen years old, when she "was just tired of holding it in."

3

"Rhonda's" Testimony

Rhonda, Sells' niece, testified that until she was fourteen years old, she liked Sells because he was "a fun uncle." When Sells was married to "Ginny," Rhonda often visited Sells' home to spend time with Ginny's three daughters, including "Allison." During one such visit, Rhonda was sleeping on the floor of Allison's bedroom when Sells entered the room "like in the middle of the night[,]" and woke Rhonda by grabbing Rhonda's breast and "private area[.]"

A few weeks or months after that initial incident between Rhonda and Sells, Rhonda's mother told Rhonda to accompany Sells to a house, but when Rhonda and Sells arrived at the house, Sells "rushed in the room and he just started taking – he pulled my clothes down, pulled his clothes down and forced himself on me, pinned me down to the bed and he inserted himself into me." Rhonda then clarified that Sells "inserted his penis into [her] vagina." "[A] couple of months later[,]" Rhonda told her mother that Sells had assaulted her, but her mother did not believe the outcry. Rhonda then decided not to tell anyone else "because [she] felt that since [her] own mother didn't believe [her], [she] felt nobody else would."

Rhonda authenticated text messages between herself and Sells, as follows:

SELLS: Good morning

[RHONDA]: U called?

SELLS: Yes

4

[RHONDA]: What's going on?

SELLS: Asking a question have [ginny] put you in this

[RHONDA]: What are u talking about

SELLS: You haven't heard

[RHONDA]: Heard about what

SELLS: Don't worry anyway love you guys

[RHONDA]: Filing charges on u

SELLS: Yes

[RHONDA]: Well u know u took my virginity at 14

SELLS: So your involved

SELLS: I'm not gonna fuss I would like to talk

[RHONDA]: I haven't to any cops like them

[RHONDA]: I haven't talked to any cops

SELLS: Well can you answer I need to talk to someone

[RHONDA]: I'm at work . . . and what is there to talk about

[RHONDA]: Every time I think about that situation I cry

SELLS: Why are you texting talk to me

[RHONDA]: I'll call after I get off

SELLS: Ok thank

Rhonda eventually reported Sells' assault to the police, but no charges were filed due to the lapse of time since the assault took place. Rhonda did, however, record a telephone call between herself and Sells during which Sells apologized to Rhonda for bothering her in that manner. Although Sells did not expressly apologize to Rhonda for sexually assaulting her when she was a teenager, Rhonda understood Sells' apology that way because Sells had done nothing else to her that warranted an apology.

"Allison's" Testimony

Allison testified that she was Sells' former stepdaughter. She recalled that she met Sells when she was about nine years old and that Sells married her mother, Ginny, about two years later. Allison lived with her mother, Sells, and Allison's two younger sisters. According to Allison, Sells was a typical stepfather at first and she considered him "a good person," but when she was about eleven years old, Sells "came in [her] room at night and had sex with [her]." After that first assault, Sells took Allison to a "nook" off the living room about twice a week and sexually assaulted her. These assaults continued until Allison began menstruating, when she was thirteen years old and in the seventh grade.

It was not until 2007, when Allison was twenty-one years old, that she reported Sells' abuse to the police. She did so because she knew that Sells was then married to a woman with daughters and it concerned her that Sells was living with

girls. Although Allison reported Sells' sexual abuse, the authorities did not pursue the case because the statute of limitations expired before she reported the matter. In about 2017, however, Allison again contacted law enforcement after learning that Tracy had made similar complaints, so that "they can link their statement to mine and something be done."

<u>"Ginny's" Testimony</u>

Ginny, Sells' former wife and Allison's mother, testified that she met Sells when her three daughters were in elementary school. They married after dating for about a year, and Ginny and Sells lived together with Ginny's three daughters and Sells' two children. Ginny testified that Sells was a good father to her children and that the girls "really looked up to him[.]"Ginny and Sells divorced when Allison was in high school. Ginny characterized the divorce as amicable, stating that she and Sells kept their own retirement benefits and neither asked the other for anything.

Ginny testified that during the time that Ginny and Sells were married, Ginny was unaware that Sells was sexually assaulting Allison, although she suspected that someone had molested Allison's younger sister, "Lisa." When Lisa had symptoms of an infection, Ginny obtained medical attention for her out of concern that Lisa had been molested. Ginny testified that she was molested as a child, and therefore she would not let her children visit friends' houses and told her children to let her know if anyone molested them. It was not until Allison was about twenty years old

7

that Ginny heard that Sells had sexually assaulted Allison. Ginny confirmed that Sells could have repeatedly assaulted Allison, as Allison testified, without Ginny's knowledge.

When asked about the text message exchange between Sells and Rhonda, Ginny denied having prompted Rhonda, Allison, Tracy, Chrissy, or anyone else to allege that Sells had sexually assaulted or abused them.

"Chrissy's" Testimony

Chrissy testified that she was sixteen years old at the time of trial and lived across the street from Sells when she was nine years old. Chrissy recalled that she visited Sells' daughters in Sells' home during the time that she lived nearby. Sells made Chrissy feel uncomfortable with "[t]he way he was looking at me all the time. . . . He was looking at me in a way like he wanted to do something with me."

Once when Chrissy was at Sells' house, she was standing in Sells' kitchen when Sells came up behind her and "started rubbing on [her] breast." Sells then began "easing to [Chrissy's] legs, to [her] thighs[,]" and touched her genitals over her clothing and was "rubbing his penis on [her]." Another time, Chrissy was on Sells' property looking for something when Sells came up behind her and Chrissy could feel Sells' penis through her clothes. On another occasion, Chrissy was sleeping on the couch in Sells' living room when she felt Sells' breath on her neck as he was "grinding" on her and saying, "Tell me you love me." Yet another time,

8

Chrissy was spending the night at Sells' home when Sells sent Chrissy a message through social media. Sells' message to Chrissy asked, "You coming in my room tonight?" When Chrissy showed Sells' daughter the message, she "was just like, 'hmm,'" but when Sells' nephew saw the message, "he was just shocked."

"Donna's Testimony

Chrissy's mother, "Donna," testified that she moved in across the street from Sells in 2016 when Chrissy was ten years old. She lived in that house for "maybe two years." After Donna's and Sells' daughters became friends, Donna and Sells became friends and socialized at Sells' home. Although Donna was not concerned when her daughters were spending time at Sells' house, she later realized that she should have been concerned when Sells gave Chrissy phones after Donna took Chrissy's phone from her.

As Donna recalled, Chrissy was ten years old when Donna first learned of the allegations against Sells. Donna did not initially believe these allegations "[b]ecause kids say things[,]" although Chrissy had no history of inventing such stories. Despite her doubt, Donna filed a police report. Although the police investigated the report of Chrissy's abuse, the investigation was later closed.

Officer Darrell Leboeuf's Testimony

Leboeuf, a Beaumont police officer, testified about his law enforcement training and experience. For almost sixteen years, Leboeuf worked as a detective in

9

the Special Crimes Unit, which handled cases involving either children or sex, but later transferred back to patrol duties because "dealing with cases of children and/or sex is like the worst of the worst; and after a while, it's just time."

Leboeuf testified that case investigation involved gathering paperwork and speaking with "everyone involved," which in this case included Tracy, Allison, Chrissy, Donna, and others, including Sells. When complainants are adults by the time of the report, Leboeuf interviews them himself, but child victims are interviewed at the Garth House by specially trained interviewers.

Leboeuf recalled that he was assigned Chrissy's case when she reported her abuse but did not move forward with the case at the time because Chrissy's "explanation of what happened did not fit the elements of the crime." When Leboeuf learned of Tracy's allegations, however, he reopened Chrissy's case.

When Leboeuf interviewed Sells, he recorded the interview and that recording was played for the jury. During the interview, Leboeuf asked Sells why Tracy would make up an allegation about something that happened years earlier, a question Sells did not then answer. Sells also could not explain why Allison, Rhonda, or Chrissy would falsely accuse him of sexual abuse, but later suggested that Tracy may have made a false allegation "because a couple of weeks prior, [Sells] put [Tracy] out of the house." Sells admitted to knowing Tracy and living in the same house with Tracy when Tracy was a child and he was over seventeen. Sells did not, however,

10

acknowledge having committed any of the offenses alleged against him. To the contrary, Sells

> could not understand why anyone would come forward with these allegations, more than one; that a lot of the things he said, he was a victim of some sort, not of necessarily a crime, but these people are lying about him, you know. They were all false. People were mad at him. And that, on the other hand, there were his daughters or some of his stepdaughters were always at his house and acted like nothing ever happened.

In Leboeuf's experience, it was not unusual for sexual abuse victims to delay reporting their abuse. It therefore did not concern Leboeuf that the victims in this case did not immediately report their abuse because Leboeuf knew that children may be afraid to come forward to report their abuse out of fear of embarrassment or of being disbelieved.

According to Leboeuf, it is possible to molest a child while others are in the home, and the following circumstances do not negate abuse:

- The child chooses to be around the abuser;

- The child exhibited no animosity to the abuser;

- Other children were voluntarily in the abuser's company; and

- Other adults trusted the abuser with their children.

## ANALYSIS

The Texas Rules of Appellate Procedure state that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate

11

citations to authorities and to the record." Tex. R. App. P. 38.1(i). Sells' brief does not meet this standard, so we could overrule his arguments for that reason alone. *See Aldrich v. State*, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996). In the interest of justice, however, we have chosen to address the merits of Sells' appeal.

Sufficiency of the Evidence

Since Sells' brief also references the standard of review for evidentiary sufficiency, we construe Sells' appeal as challenging the sufficiency of the evidence of Sells' guilt. We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318-19). "The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses." *Id.* We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We may not substitute our judgment for that of the factfinder concerning the weight and credibility of the

12

evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We permit juries to draw multiple inferences from facts as long as each inference is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360.

A person commits the offense of continuous sexual abuse of a child if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age[.]

Tex. Penal Code Ann. § 21.02(b)(1), (2)(A).

Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offenses of aggravated sexual assault and indecency with a child. *Id.* § 21.02(c)(2), (4). A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means and the victim is younger than fourteen years of age. *Id.* § 22.021(a)(1)(A)(i), (a)(2)(B). A person commits the offense of indecency with a child if he

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

13

(B) causes the child to expose the child's anus or any part of the child's genitals.

*Id.* § 21.11(a)(1), (2).

"Sexual contact" is defined as the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

*Id.* § 21.11(c).

The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

With respect to the alleged continuous sexual abuse, Tracy's testimony alone was sufficient evidence from which a jury could convict Sells if she testified to two or more incidents of sexual abuse at least thirty days apart after September 1, 2007 and if the jury found her credible. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b). Although Tracy testified to multiple incidents of sexual abuse that occurred more than thirty days apart, one such incident happened before 2007, and therefore that

14

incident cannot be used in a prosecution for continuous sexual abuse of a child. *See Martin*, 335 S.W.3d 873-74. That said, the incident of sexual abuse Tracy described when Sells pinned her to the bed and was "grinding" on her took place after September 1, 2007, based on Tracy's recollection of her age at that time.[2] *See* Tex. Penal Code Ann. § 21.11(c). Tracy further testified that the sexual abuse "kept going on" when she was ten to twelve years old. The jury, as trier of fact, could accept this testimony in satisfaction of the statutory requirement that there be evidence of two acts of sexual abuse after September 1, 2007. *See* Tex. Penal Code Ann. § 21.02(b).

As the factfinder, the jury was entitled to judge the credibility of each witness. *See Hughes v. State*, 897 S.W.2d 285, 289-90 (Tex. Crim. App. 1994). The testimony from a child who testifies that she was the victim of a sexual assault is sufficient to support a defendant's conviction for sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Carr v. State*, 477 S.W.3d 335, 338 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the essential elements of the offense of continuous sexual abuse of a child beyond a reasonable doubt. *See Brooks*, 323

---

[2] Tracy was born in 1997 and testified that this happened when she was eleven or twelve years old, so according to Tracy's recollection, it must have been later than 2007.

15

S.W.3d at 912; *Hooper*, 214 S.W.3d at 13. We overrule Appellant's sufficiency issue.

Admissibility of Evidence

In his brief, Sells states that the trial court should not have admitted Rhonda's testimony because, Sells argues that his conduct toward Rhonda "was not a 'crime' when committed," and Rhonda's testimony therefore was rendered inadmissible under the due process and ex post facto provisions of the United States and Texas Constitutions. *See* U.S. CONST. art. I, §§ 9, 10, amend. XIV; Tex. Const. art. I, §§ 16, 19.

As we interpret Sells' brief, Sells argues on appeal that the trial court erred by admitting Rhonda's testimony since Sells could not be prosecuted for sexually assaulting Rhonda for two reasons: (1) the statute of limitations had expired, and (2) Sells' continuous sexual abuse of Rhonda took place before September 1, 2007, the effective date of the section of the Texas Penal Code that applies to continuous sexual abuse of a young child. *See Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd).

We review a trial court's ruling on the admissibility of extraneous offense evidence for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). A trial court does not abuse its discretion if its decision falls within the "zone of reasonable disagreement." *Id.* (citations omitted) "If the trial court's

decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed." *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd) (citations omitted). Reviewing courts should not substitute their judgment for that of the trial court. *Id.* Also, "a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation." *Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010) (citation omitted).

"The erroneous admission of extraneous-offense evidence constitutes non-constitutional error[.]" *Pittman v. State*, 321 S.W.3d 565, 572 (Tex. App. —Houston [14th Dist.] 2010, no pet.) (citation omitted). An appellate court may not reverse for non-constitutional error if, after examining the record as a whole, the appellate court has "fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *see also* Tex. R. App. P. 44.2(b). Therefore, even if evidence is admitted by a trial court in error, substantial rights are not affected by the erroneous admission of evidence "'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Johnson*, 967 S.W.2d at 417). If

17

the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Generally, an accused must be tried only for the charged offense and may not be tried for a collateral crime or for being a criminal generally. *Harris v. State*, 475 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see also* Tex. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Sells was charged with the continuous sexual abuse of a child, an offense under section 21.02 of the Penal Code, to which article 38.37 applies. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(a)(1)(B); Tex. Penal Code Ann. § 21.02(b). Therefore, evidence that the defendant committed a separate offense included in Chapter 21 of the Penal Code may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). This statutory provision applies only in certain prosecutions, including prosecutions for continuous sexual abuse of a young child, and applies despite contrary provisions of the Texas Rules of Evidence. *Id.* §§ 1(a)(1), (b), 2(a)(1)(B); *see* Tex. R. Evid. 404, 405. When a trial court admits such evidence of a defendant's

extraneous offenses, and when either party so requests, the trial court must give the jury

> a limiting instruction regarding the purposes for which the evidence may be used. The court shall provide the limiting instruction: (1) orally at the time the evidence is admitted; and (2) in writing on conclusion of the presentation of evidence in the case, at the time written instructions are provided to the jury.

Tex. Code Crim. Proc. Ann. art. 38.37, § 1(c).

Before the trial court allowed the testimony to be heard by the jury, the trial court held hearings regarding the admissibility of Rhonda's, Allison's, and Chrissy's testimony to determine whether the evidence would "be adequate to support a finding by the jury that [Sells] committed the separate offense[s] beyond a reasonable doubt[.]" *Id.* § 2-a(1). In conformity with article 38.37 § 2-a(2), the court conducted these hearings outside the jury's presence. *Id.* § 2-a(2).

At the hearings, Rhonda, Allison, and Chrissy testified as they did in front of the jury, and in each instance, the trial court conducted the balancing test required by Rule 403, found that the testimony satisfied article 38.37, and admitted it over Sells' objections. *See Brown v. State*, No. 09-25-00025-CR, No. 09-25-00026-CR, 2026 Tex. App. LEXIS 1802, **30-31 (Tex. App.—Beaumont November 7, 2025, no pet.) (mem. op., not designated for publication). ("When a trial court considers the admission of extraneous offense evidence offered under article 38.37, section 2 and Rule 404(b), the trial court also considers the balancing test under Rule 403 if

19

the defendant lodges a timely Rule 403 objection before the evidence is admitted."); and *See Clark v. State*, No. 09-20-00083-CR, 2021 Tex. App. LEXIS 9500, at **30-31 (Tex. App.—Beaumont Nov. 24, 2021, no pet.) (mem. op., not designated for publication) ("Although admissible under Rule 404(b), evidence may still be excluded under Rule 403[.]"). *See* Tex. R. Evid. 403. The trial court therefore complied with article 38.37 in admitting Rhonda's testimony as well as Allison's and Chrissy's testimony.

Even though Sells' sexual abuse of Rhonda occurred before September 1, 2007, the effective date of section 21.02 of the Penal Code, Sells' sexual assaults of Rhonda were not, as Sells states in his brief, "not a 'crime' when committed[,]" and section 21.02 of the Texas Penal Code is not an ex post facto law. *See McCulloch v. State*, 39 S.W.3d 678, 681-85 (Tex. App.—Beaumont 2001, pet. ref'd) (admitting evidence of the defendant's other crimes and holding that section 38.37 does not violate the prohibition against ex post facto laws); *see also Martin*, 335 S.W.3d at 873-74 (explaining the significance of the dates the crimes were committed). According to *McCulloch*, to constitute an ex post facto law, a statute must:

(1) punish as a crime an act previously committed that was innocent when done;

(2) aggravate a crime and make it greater than it was when committed;

(3) inflict a greater punishment than the law annexed to the crime when committed; or

(4) alter the legal rules of evidence such that less or different evidence is needed in order to convict the offender.

39 S.W.3d at 683 (citing *Carmell v. Texas*, 529 U.S. 513, 522 (2000)).

In this case, Sells appears to argue that admitting Rhonda's testimony violated the first category, both because his alleged sexual assaults of Rhonda took place before September 1, 2007, and because Rhonda was fourteen years old when Sells first assaulted her. *See* Tex. Penal Code Ann. § 21.02(b)(2)(A) (dictating that the victim must be younger than fourteen years of age). Although we agree Sells' abuse of Rhonda cannot be prosecuted under section 21.02 for the foregoing reasons, Sells was not prosecuted under section 21.02 for sexually abusing Rhonda. Instead, Sells was prosecuted under section 21.02 for sexually abusing Tracy. Rhonda's testimony that Sells sexually assaulted her when she was a teen strengthens the case against Sells for sexually abusing Tracy and was admissible under article 38.37. *See* Tex. Code Crim. Proc. Ann. art. 38.37.

The Court's Charge

Sells further complains that the trial court erred in failing to include a limiting instruction in its charge to the jury. Sells contends that the trial court should have instructed the jury to consider the length of time between his assaults of Rhonda and the trial when considering its verdict. Sells' request for an instruction about time lapse seems to conflate impeachment requirements under Rule 609 with article 38.37. *See* Tex. R. Evid. 609(a), (b); Tex. Code Crim. Proc. Ann. art. 38.37. Rule

21

609 limits impeachment through a felony conviction to ten years from the later of the conviction or the release from confinement unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b). Article 38.37 contains no such time limit. Tex. Code Crim. Proc. Ann. art. 38.37. Moreover, the State did not offer Rhonda's testimony to impeach Sells, so Rule 609 does not apply to her testimony.

We further observe that the court's charge includes a limiting instruction regarding Sells' alleged extraneous offenses, which necessarily includes Rhonda's testimony. The trial court instructed the jury:

> During the trial, you heard evidence that the Defendant may have committed other wrongful acts against others not charged in the indictment, namely, Sexual Assault, Aggravated Sexual Assault, or Indecency with a Child against [Rhonda], [Chrissy] and [Allison]. The State offered the evidence to show the state of mind of the Defendant's character, acts performed in conformity with the character of the Defendant, and for other matters of opportunity and intent. You are not to consider that evidence at all unless you find beyond a reasonable doubt[] that the defendant did, in fact, commit such wrongful act or acts. Those of you who believe the Defendant did the wrongful act or acts may consider them.
>
> Even if you do find the Defendant committed a wrongful act or acts pursuant to this Instruction, you may consider this evidence only for the limited purpose or purposes I have described. You may not consider this evidence to prove that the Defendant is a bad person in general and for such reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purpose or purposes I have described. To consider this evidence for any other purpose would be improper.

22

This instruction complies with article 38.37 and it instructs the jury "regarding the purposes for which the evidence may be used." Tex. Code Crim. Proc. Ann. art. 38.37, § 1(c)(2). Although the trial court did not orally instruct the jury at the time the evidence was admitted, it was not required to do so because Sells did not request a limiting instruction at that time. *See id*. § 1(c)(1); Tex. R. Evid. 105(a); *Delgado v. State*, 235 S.W.3d 244, 250-54 (Tex. Crim. App. 2007). The trial court thus did not err in omitting an oral limiting instruction. *Delgado*, 235 S.W.3d at 250-54.

We overrule Sells' challenge to the trial court's jury charge.

## CONCLUSION

Having overruled all of Sells' appellate issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on April 7, 2026
Opinion Delivered May 27, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

23